IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT STAGGS,<br><br>    Petitioner,<br><br>vs.<br><br>DERRAL ADAMS, Warden, California State Prison, Corcoran,<br><br>    Respondent. | No. 2:07-cv-02026-JKS<br><br>MEMORANDUM DECISION |

  Petitioner Robert Staggs, a state prisoner appearing through counsel, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Staggs is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at the California State Prison, Corcoran.  Respondent has answered, and Staggs has replied.

I.  BACKGROUND/PRIOR PROCEEDINGS

  Following a jury trial Staggs was convicted in the San Joaquin County Superior Court of first-degree murder (Cal. Penal Code § 187(a)).  The trial court sentenced Staggs to an indefinite prison term of 25 years to life.  Staggs timely appealed his conviction to the California Court of Appeal, Third District, which affirmed his conviction and sentence in an unpublished, reasoned decision,[1] and the California Supreme Court summarily denied review without opinion or citation to authority on June 28, 2006.  Staggs timely filed his petition for relief in this Court on September 26, 2007.

---

[1] *People v. Staggs*, 2006 WL 728389.

## II.  GROUNDS RAISED/DEFENSES

Staggs contends that the trial court erred in instructing the jury by:  (1) giving a murder by lying in wait instruction; (2) failing to give an accomplice instruction; (3) instructing the jury pursuant to CALJIC No. 2.11.5; (4) instructing the jury pursuant to CALJIC No. 2.92; (5) instructing the jury pursuant to CALJIC 8.71; and (6) failing to include a lesser-included-offense instruction.  Respondent contends the third ground is procedurally barred.  Respondent raises no other affirmative defenses.[2]  In his Traverse, Staggs withdrew his third and sixth grounds.

## III.  STANDARD OF REVIEW

Because the petition was filed after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[3] Consequently, this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[5]  The holding must also be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the

---

[2] *See* Rules — Section 2254 Cases, Rule 5(b).

[3] 28 U.S.C. § 2254(d).

[4] *Id.*; *see Williams v. Taylor*, 529 U.S. 362, 404-06 (2000); *see also Lockyer v. Andrade,* 538 U.S. 63, 70-75 (2003) (explaining this standard).

[5] *Williams*, 529 U.S. at 412.

Supreme Court over federal courts.[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court,[11] which in this case was that of the California Court of Appeal.  Under AEDPA, the state

---

[6] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, 127 (2008) (per curiam); *Moses v. Payne*, 555 F.3d 742, 753–54 (9th Cir. 2009) (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

[10] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

To the extent that Staggs raises issues of the proper application of State law, they are beyond the purview of this Court in a federal habeas proceeding. A federal court must accept that state courts correctly applied state laws.[13] It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[14] A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."[15] This principle applied to federal habeas review of state convictions long before AEDPA.[16] A federal court errs if it interprets a state legal doctrine in a manner that directly conflicts with the state supreme court's interpretation of the law.[17] It does not matter that

---

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[13] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (it is presumed that the state court knew and correctly applied state law), overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584 (2002).

[14] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[15] *Bradshaw v. Richey,* 546 U.S. 74, 76, (2005); *see also West v. AT & T,* 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . .").

[16] *See Mullaney v. Wilbur,* 421 U.S. 684, 691 (1975) ("state courts are the ultimate expositors of state law").

[17] *See Bradshaw*, 546 U.S. at 76–78 ("Because the Sixth Circuit disregarded the Ohio Supreme Court's authoritative interpretation of Ohio law, its ruling on sufficiency of the evidence was erroneous.").

the state supreme court's statement of the law was *dictum* if it is perfectly clear and unambiguous.[18]

A determination of state law by an intermediate state appellate court is also binding in a federal habeas action.[19] This is especially true when the highest court in the state has denied review of the lower court's decision.[20]

A petitioner may not transform a state-law issue into a federal one by simply asserting a violation of due process.[21] Nor may a federal court issue a habeas writ based upon a perceived error of state law, unless the error is sufficiently egregious to amount to a denial of due process under the Fourteenth Amendment.[22]

IV.  DISCUSSION

A challenged jury instruction violates the federal constitution if there is a "reasonable likelihood that the jury applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence."[23] The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth

---

[18] *Id.* at 76.

[19] *See Hicks v. Feiock,* 485 U.S. 624, 629-30 & n.3 (1988) (noting state appellate court's determination of state law is binding and must be given deference).

[20] *Id.*; *see also West,* 311 U.S. at 237 ("This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court.").

[21] *Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996).

[22] *See Pulley v. Harris*, 465 U.S. 37, 41 (1984).

[23] *Boyde v. California,* 494 U.S. 370, 380 (1990).

Amendment.[24] This Court must also assume, in the absence of evidence to the contrary, that the jury followed the instructions as given.[25]

It is well established that not only must the challenged instruction be erroneous but it must violate some constitutional right. The challenged instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record.[26] This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the constitution. The category of infractions that violate "fundamental fairness" is very narrowly drawn.[27] "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation."[28]

Ground 1:  Lying in Wait Instruction.

Staggs argues that there was insufficient evidence to support an instruction of murder by lying in wait. The California Court of Appeal rejected Staggs's argument, holding:

> Defendant argues it was error for the trial court to give a lying in wait instruction because there was not substantial evidence to support a theory of lying in wait. He argues the error was prejudicial because the instruction can eliminate the mens rea necessary to establish first degree murder. We shall conclude substantial evidence supported the instruction.

---

[24] *Francis v. Franklin*, 471 U.S. 307, 309 (1985).

[25] *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh,* 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *Francis*, 471 U.S. at 324 n.9.

[26] *Estelle*, 502 U.S. at 72

[27] *Id*. at 72-73.

[28] *Id*.

The trial court gave the following instruction:

"Murder which is immediately preceded by [lying] in wait is murder of the first degree.

The term 'lying in wait' is defined as a waiting and watching for an opportune time to act, together with a concealment by ambush or some other secret design to take the other person by surprise. The lying in wait need not continue for any particular period of time provided that its duration is such as to show a state of mind equivalent to premeditation or deliberation."

Murder by lying in wait requires the following elements: "(1) a concealment of purpose, (2) a substantial period of watching and waiting for a favorable or opportune time to act, and (3) immediately thereafter, a surprise attack on an unsuspecting victim from a position of advantage." In determining whether the lying in wait instruction was supported by substantial evidence, we must determine whether a reasonable trier of fact could have found lying in wait murder beyond a reasonable doubt.

Searcy's testimony indicated defendant stalked his prey by driving around the neighborhood where the victim was eventually murdered in a stolen van. It was the same neighborhood where the victim worked and where his mother lived. Kyle Tinney testified defendant told him the victim was hard to get, and that defendant had tried to get him before. The victim had been at the park only about 10 minutes when he was killed, indicating defendant had been watching and waiting for him. Espinoza testified the shooting was carried out so quickly, he never saw the van. "They came up, they fired, and took off." Since the victim's gunshot wound was on the left side of his head, and the victim had been in the driver's seat of the car, it is probable the victim never saw the shooter, either. This evidence is sufficient to support a lying in wait theory.[29]

As stated by the Supreme Court in *Jackson*,[30] the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond

---

[29] *Staggs*, 2006 WL 728289 at * 6–7.

[30] *Jackson v. Washington*, 443 U.S. 307 (1979).

a reasonable doubt."[31]  This Court must, therefore, determine whether the decision of the California Court of Appeal on the merits unreasonably applied *Jackson*.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.[32]  Although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[33]  This Court must also be ever mindful of the deference owed to the trier of fact and the sharply limited nature of constitutional sufficiency review.[34]

Staggs misperceives the role of a federal court in a federal habeas proceeding challenging a state-court conviction.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction.[35]  In this case, the California Court of Appeal found there was sufficient evidence to support a lying in wait theory under California law, a decision that is beyond the limited purview of this Court in a federal habeas proceeding.  This Court cannot say that the decision of the California Court of Appeal was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[36]  Nor

---

[31] *Id.* at 319 (emphasis in the original).

[32] *See Engle*, 456 U.S. at 128.

[33] *Jackson*, 443 U.S. at 324 n.16.

[34] *Juan H. v. Allen*, 408 F.3d 1262, 1275 (9th Cir. 2005).

[35] *See Schlup v. Delo*, 513 U.S. 298, 340 (1995).

[36] 28 U.S.C. § 2254(d).

can this Court find that the state court unreasonably applied the correct legal principle within the scope of *Andrade–Williams-Landrigan*; *i.e.*, the state court decision was more than incorrect or erroneous, its application of clearly established law was objectively unreasonable.  Staggs is not entitled to relief under his first ground.

Ground 2:  Failure to Give Accomplice Instruction.

Staggs argues that under California law the trial court should have instructed the jury *sua sponte* that accomplice testimony must be received with caution and corroborated.  The California Court of Appeal rejected Staggs's arguments holding that there was insufficient evidence to establish that Tinney, the alleged accomplice, was, in fact, an accomplice.[37]  The court further held that even if Tinney was an accomplice, there was sufficient evidence in the record to corroborate his testimony.[38]

There is no federal constitutional rule requiring corroboration of accomplice testimony.[39] Rather, Staggs "would have [this Court] abandon [the] time honored rule that the uncorroborated testimony of an accomplice is sufficient to convict."[40]  In this case, Staggs's claim is based solely upon California state law concerning accomplice status and the requirement of corroboration.  Because there is no federal constitutional question presented by this ground, it cannot be the basis for habeas relief.  Staggs is not entitled to relief under his second ground.

---

[37] *Staggs*, 2006 WL 728289 at *3.

[38] *Id*. at *4.

[39] *See Caminetti v. United States*, 242 U.S. 470, 495 (1917).

[40] *United States v. Galardi*, 476 F.2d 1072, 1075 (9th Cir.1973); *see also Caminetti*, 242 U.S. at 495 ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them.").

Ground 3:  CALJIC No. 2.11.5.  [*Withdrawn*]

Ground 4:  CALJIC No. 2.92.

The trial court gave CALJIC No. 2.92 without objection, which instructed as follows:

Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crime charged.  In determining the weight to be given eyewitness identification testimony, you should consider the believability of the eyewitnesses, as well as any factors which bear upon the accuracy of the witness' identification of the defendant, including but not limited to any of the following:

 The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;

 The stress, if any, to which the witness was subjected at the time of the observation;

 The witness' ability following the observation to provide a description of the perpetrator of the act;

 The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;

 The cross-racial or ethnic nature of the identification;

 The witness' capacity to make an identification;

 Evidence relating to the witness' ability to identify other alleged perpetrators of the criminal act;

 Whether the witness was able to identify the alleged perpetrators in a photographic or physical line-up;

 The period of time between the alleged criminal act and the witness' identification;

 Whether the witness had prior contacts with the alleged perpetrator;

 The extent to which the witness is either certain or uncertain of the identification;

>   Whether the witness' identification is, in fact, the product of his own recollection;
>
>   And any other evidence relating to the witness' ability to make an identification.[41]

The trial court also instructed the jury using CALJIC 2.91, as follows:

> The burden is on the People to prove beyond a reasonable doubt that the defendant is the person who committed the crime with which he is charged.
>
> If, after considering the circumstances of the identification, and any other evidence in this case, you have a reasonable doubt whether defendant was the person who committed the crime, you must give the defendant the benefit of that doubt and find him not guilty.[42]

Staggs contends that it was error to instruct the jury in the language of CALJIC No. 2.92 that "Eyewitness testimony has been received in this trial for the purpose of identifying the defendant as the perpetrator of the crime charged," when no eyewitness to the offense identified defendant as the perpetrator. Staggs argues, without citation to authority, that the term "eyewitness" normally refers to a person who witnesses the crime firsthand. According to Staggs, when the jury was told that eyewitness testimony was received for the purpose of identifying the defendant as the perpetrator, it implied that there was an eyewitness to the criminal act. The California Court of Appeal rejected Staggs's contention, holding:

> Defendant argues the first sentence of the instruction contained a false statement of fact because the prosecution presented no eyewitness testimony identifying him as the perpetrator of the murder. He argues the instruction affected his substantial rights because it falsely stated there was direct eyewitness evidence to establish his guilt.

---

[41] Clerk's Transcript, p. 235.

[42] Clerk's Transcript, p. 234.

> Defendant is incorrect.  The instruction did not indicate the prosecution had presented the testimony of an eyewitness to the murder, as defendant's argument implies.  It merely instructed that eyewitness testimony had been presented, and that such testimony was presented for the purpose of identifying defendant as the perpetrator of the murder.  This was correct.  The prosecution introduced the eyewitness testimony of Searcy.  She was an eyewitness to the defendant driving the van described as transporting the shooter to the victim.  She saw defendant in the van in the neighborhood where the shooting occurred.  Her testimony was introduced for the purpose of identifying defendant as the perpetrator, even though she was not an eyewitness to the crime.  There was nothing incorrect or misleading about the instruction.
>
> Defendant argues Searcey's testimony was circumstantial evidence, but the preface to CALJIC No. 2.92 informed the jury her identification of him the day before was deemed direct evidence that he was the perpetrator of the murder.  The instruction, repeated in full, did not so inform the jury.  We reject defendant's argument that there was any error in the court's instruction.

As the Supreme Court has explained "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[43]  Taking CALJIC No. 2.92 in its entirety, given in conjunction with CALJIC No. 2.91, this Court cannot say that the California Court of Appeal ignored the fundamental principles established by *Boyde-Francis-Weeks-Estelle*, the most relevant Supreme Court precedents, which this Court must apply.[44]  In particular, by simply alleging a due process violation in conclusory terms, Staggs has not identified the specific guarantee enumerated in the Bill of Rights that was violated.[45]  Nor has Staggs rebutted the presumption that the jury followed the instructions as given.[46]  In the absence of explicit direction from the Supreme Court, this

---

[43] *Williams*, 529 U.S. at 412; *Musladin*, 549 U.S. at 74.

[44] *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007); *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009).

[45] *Estelle*, 502 U.S. at 72–73.

[46] *Weeks*, 528 U.S. at 234; *Richardson,* 481 U.S. at 206; *Francis*, 471 U.S. at 324 n.9.

Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions.[47] That is, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[48] Staggs is not entitled to relief under his fourth ground.

Ground 5:  CALJIC No. 8.71.

The trial court instructed the jury using CALJIC 8.71 as follows:

> If you are convinced beyond a reasonable doubt and unanimously agree that the crime of murder has been committed by the defendant but you unanimously agree that you have a reasonable doubt whether the murder was of the first or of the second degree, you must give the defendant the benefit of that doubt and return a verdict fixing the murder as of the second degree.

Staggs argues that CALJIC No. 8.71 diluted the People's burden of proving first degree murder beyond a reasonable doubt because it required the jury to unanimously agree that there is a reasonable doubt as to whether the murder is in the first- or second-degree thereby precluding any juror from giving the defendant the benefit of the doubt.  The California Court of Appeal rejected Staggs's argument, holding:

> Defendant argues the trial court erred in giving this instruction because it incorrectly informed each individual juror that he or she could only give defendant the benefit of the doubt with regard to the degree of the crime if the jury unanimously agreed there was a reasonable doubt as to the degree of the murder.

---

[47] *Musladin*, 549 U.S. at 74; *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses*, 555 F.3d at 753–54 (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[48] *Musladin*, 549 U.S. at 77 (alterations by the Court); *see Wright*, 552 U.S. at 127.

In *People v. Pescador* (2004) 119 Cal.App.4th 252, 256, the defendant made the identical argument, claiming the instruction led the jurors to believe they could not give the defendant the benefit of the doubt unless they unanimously agreed there was reasonable doubt as to the degree of the crime. This court held the jury could not have so construed the instruction because the trial court had also given CALJIC Nos. 17.11 and 17.40, telling the jury, "'[i]f you find the defendant guilty of the crime of murder, but have a reasonable doubt as to whether it is of the first or second degree, you must find him guilty of that crime in the second degree[,]' "and, "'[t]he People and the defendant are entitled to the individual opinion of each juror. [¶] Each of you must consider the evidence for the purpose of reaching a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after discussing the evidence and instructions with the other jurors . . . .'" (*Id.* at p. 257.)

Defendant argues the crucial difference in this case is that the trial court did not give CALJIC No. 17.11, which would have instructed the jurors to find a second degree crime if there was reasonable doubt as to the degree. However, the trial court did give CALJIC No. 17.40, instructing the jurors to independently decide the case for themselves, as well as the standard reasonable doubt instruction.

In light of the instructions as a whole, it is not reasonably likely the jurors believed they were required to make a unanimous finding they had a reasonable doubt as to the degree of the murder. If the jury did misconstrue the instruction, it was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705].) Under the facts of this case, if the jury believed defendant was guilty of murder, there was no reasonable possibility it also believed the murder was committed without premeditation and deliberation. The evidence was that the motive for the killing was a contract for hire, that defendant tried to "get" the victim at least once before he finally succeeded, that the defendant was stalking the victim's neighborhood, that a van was stolen for the purpose of committing the crime, that the victim was at the spot he was murdered only a few minutes before being shot, and that there was no altercation or face-to-face meeting of any kind before the victim was murdered. The defense theory was that someone else committed the murder, most likely either Kyle Tinney or Espinoza. The evidence regarding the circumstances of the murder did not lend itself to a finding of no premeditation or deliberation. If the jury believed defendant was guilty, there is no reasonable possibility it believed defendant guilty of only second degree murder.

In this case, the trial court instructed the jury that the defendant was presumed innocent until proven guilty, which placed the burden of proving guilt beyond a reasonable doubt on the

People.[49] The trial court further instructed the jury that each fact essential to finding the defendant guilty must be established beyond a reasonable doubt.[50] Therefore, this Court cannot say that the California Court of Appeal ignored the fundamental principles established by *Boyde-Francis-Weeks-Estelle*, the most relevant Supreme Court precedents, which this Court must apply.[51] In particular, Staggs has not rebutted the presumption that the jury followed the instructions.[52] In the absence of explicit direction from the Supreme Court, this Court cannot say that the decision of the California Court of Appeal in this case was contrary to, or involved an unreasonable application of the relevant Supreme Court decisions.[53] That is, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[54] Staggs is not entitled to relief under his fifth ground.

Ground 6: Lesser Included Offense Instruction. [*Withdrawn*]

---

[49] Clerk's Transcript, pp. 206, 233.

[50] Clerk's Transcript, pp. 213, 226.

[51] *See Abdul-Kabir v. Quarterman*, 550 U.S. 233, 258 (2007); *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009).

[52] *Weeks*, 528 U.S. at 234; *Richardson,* 481 U.S. at 206; *Francis*, 471 U.S. at 324 n.9.

[53] *Musladin*, 549 U.S. at 74; *see Kessee v. Mendoza-Powers*, 574 F.3d 675, 678 (9th Cir. 2009); *Moses*, 555 F.3d at 753–54 (explaining the difference between principles enunciated by the Supreme Court that are directly applicable to the case and principles that must be modified in order to be applied to the case; the former are clearly established precedent for purposes of § 2254(d)(1), the latter are not).

[54] *Musladin*, 549 U.S. at 77 (alterations by the Court); *see Wright*, 552 U.S. at 127.

V. CONCLUSION AND ORDER

Staggs is not entitled to relief under any ground raised in the petition.

**IT IS HEREBY ORDERED THAT** the Petition for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[55] Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. See Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated: November 25, 2009.

                                                /s/ James K. Singleton, Jr.
                                                JAMES K. SINGLETON, JR.
                                                United States District Judge

---

[55] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).